# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-60747

JELINDA STEWART

Plaintiff-Appellant

v.

MISSISSIPPI TRANSPORTATION COMMISSION

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before JONES, Chief Judge, and PRADO and HAYNES, Circuit Judges.

EDITH H. JONES, Chief Judge:

More than a year after Jelinda Stewart ("Stewart") was reassigned away from a supervisor who she claimed had harassed her, the Mississippi Transportation Commission placed her again under his control, and verbal harassment resumed. Stewart filed this lawsuit alleging a hostile work environment and retaliation for reporting sexual harassment. The district court granted summary judgment to her employer. We AFFIRM. Stewart's reassignment was an "intervening action," *National Railroad Passenger Car v.*

*Morgan*, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075 (2002), that cut off the employer's liability for the earlier harassment; the offending supervisor's comments did not create an actionable hostile work environment in 2006; and Stewart was subject to no materially adverse retaliatory action.

## I. BACKGROUND

On September 1, 2003, Stewart began work for the Mississippi Department of Transportation ("MDOT") as a physical laborer on a crew supervised by Jerry Loftin ("Loftin"). She received a promotion after six months, the first of several she would receive in quick succession.

Loftin, she asserts, harassed her from the start. At the end of her first week, Loftin allegedly told Stewart that she was a pretty lady and invited her on a date. She declined. Loftin continued to pursue her, "hitting" on her any time they were alone, including in the office that they shared. Stewart further claims that Loftin told her about his intimate relationship with another MDOT employee, whom he paid $600 per month and bought clothes for, and offered Stewart a similar arrangement.

Stewart was reluctant to report Loftin's behavior because she feared losing her job. Loftin, she said, frequently boasted of his close ties to MDOT management and often promised, "I may not get you in the wash, but I'll get you in the rinse."

In the spring of 2004, Loftin's behavior escalated into physical touching. While the two were in a truck together, he attempted to grab her hand. He tried to kiss her on several occasions. On one occasion, when Stewart was distracted by paperwork, Loftin managed to kiss her on the cheek.

After the kissing incident, Stewart and another woman on Loftin's crew, Teri Haynes, reported Loftin's inappropriate sexual statements to his supervisor, Chris Bryan. On September 24, 2004, Bryan called a meeting with Loftin, supervisor Todd Jordan, and human resources director Philip Coco. According to a memorandum by Bryan, Loftin was instructed "that this behavior is unacceptable" and should cease. Loftin "stated that he understood and it would not happen in the future."

Four days later, however, Loftin approached Stewart at a restaurant as she ate an ice cream sundae and, according to her account, "told her to save the cherry because he had things he wanted to do to her with [it] later." Stewart reported the incident to Bryan the following morning.

On October 11, 2004, Stewart was removed from Loftin's supervision and assigned to an office job under Bryan. She worked under Bryan until July 2005, when she was reassigned to a work crew supervised by Larry Bennett. She was subsequently promoted to Bennett's administrative assistant, responsible for

entering equipment usage and materials usage reports for three counties and employee time sheets for a few crews.

In December 2005, Bennett announced his impending retirement, and Stewart learned that Loftin planned to apply for Bennett's position. He got the job.

Stewart concedes that she was not subject to any harassment by Loftin for about sixteen months, from the time she was removed from his supervision in October 2004 until February 2006.

Early that month, shortly before assuming his new position, Loftin stuck his head in the door of Stewart's office and told her that "he was going to be in that office and that they were gonna be sweet and they were going to have an understanding." Over the next month, Stewart alleges, Loftin made similar remarks and told her that he loved her approximately six times. Stewart reported these incidents to Coco, the human resources director, and then, dissatisfied with Coco's response, called MDOT's human resources division in Jackson, Mississippi.

On March 8, Stewart went to Jackson and gave a statement about Loftin's harassment to Carolyn Bell, the agency's civil rights director. The agency launched an immediate investigation and put Stewart on administrative leave, with full pay and benefits, while it was conducted.

4

The investigation proved inconclusive, but Bell decided, in the interest of all parties, to separate Stewart and Loftin. Loftin kept his position but was moved to a different building. On March 30, Stewart returned to work and was reassigned to Travis Boyle. Though her position, salary, and duties were unchanged, Stewart's workload increased considerably because she became responsible for entering reports for the fourteen counties and eight crews assigned to Boyle, tasks that had previously been shared by all of the other supervisors' secretaries. She was also given over a year's worth of equipment usage reports to enter. Further, Stewart claims that other employees were told not to fraternize with her, that she was not allowed to close her office door, that the locks on her door were changed, and that she was not invited to functions with the other secretaries.

On April 26, 2006, Stewart filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against Loftin for sexual harassment and, one month later, filed a civil complaint against him. On December 1, 2006, she received a right-to-sue letter permitting her to institute a civil action under Title VII against MDOT. She amended her complaint to join the agency, charging it with sexual harassment, maintaining a hostile work environment, and retaliation. (Appellee Mississippi Transportation Commission ("MTC") was subsequently substituted for MDOT.)

5

On August 4, 2008, the district court granted summary judgment in favor of MTC and stayed trial as to Loftin. In a well-reasoned opinion, the court concluded that Stewart could not premise her harassment claim on pre-October 2004 conduct because it was barred by Title VII's 180-day statute of limitations and was not part of a "continuing" violation due to MDOT's intervening action—reassigning Stewart away from Loftin. Standing alone, the alleged 2006 harassment was not sufficiently severe or pervasive to alter the conditions of Stewart's employment and create an abusive working environment. Finally, the district court rejected Stewart's retaliation claim, finding that none of Stewart's alleged deprivations—the paid administrative leave, heavier workload, etc.—amounted to a materially adverse action.

Stewart timely appealed.

## II. STANDARD OF REVIEW

This court reviews *de novo* a district court's decision to grant summary judgment when "no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Deas v. River West, L.P.*, 152 F.3d 471, 475 (5th Cir. 1998). On appeal, "[f]act questions are viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo*." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). We will affirm the district court's decision if we "find that no genuine issue of material fact remained for trial and that judgment was proper as a matter of law." *Carriere v. Sears, Roebuck & Co.*,

893 F.2d 98, 102 (5th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)).

## III.  DISCUSSION

On appeal, Stewart challenges each of the district court's dispositive conclusions.

### A.  Jurisdiction

First, however, we must address this court's jurisdiction.  Our court is one of limited jurisdiction, which is ordinarily confined to review of final judgments. MTC contends that the district court's order dismissing it from the litigation was interlocutory, and thus its appeal beyond our jurisdiction, because the case against Loftin remains pending and the court did not certify its decision pursuant to Fed.R.Civ. Proc 54(b) ("when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").

Where an order entering judgment is unclear, the intent of the district court, as reflected in the order and the documents referenced in the order, governs. *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1219–20 (5th Cir. 1990).  Further, the intent to certify a judgment as final must be unmistakable. *Briargrove Shopping Center Joint Venture v. Pilgrim Enterprises, Inc.*, 170 F.3d 536, 539 (5th Cir. 1999).  But where there is unmistakable intent,

"talismanic words" are not required  in order to satisfy Rule 54(b).  *Id.*; *Gray ex rel. Rudd v. Beverly Enters. Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004).

Here, despite the district court's failure to cite Rule 54(b), its intention to render a final judgment was plain.  The district court's initial order entered a Rule 58 judgment dismissing both defendants, MTC and Loftin.  Later that day, it set aside that judgment as erroneous and entered an amended judgment, dismissing only MTC.  Though continuing to cite Rule 58, this second order pointedly makes the two determinations required by Rule 54(b).  The judgment dismissing MTC with prejudice is undoubtedly "an ultimate disposition" and so "final" in nature.  As to the second, the order roughly tracks the language of Rule 54(b), explicitly "finding no just reason to delay entry of Judgment."  Because these words evince an unmistakable intent to direct entry of a final judgment based on the criteria of Rule 54(b), this court has jurisdiction.

## B.  Continuing Violation

Stewart contends that Loftin's actions beginning in 2003 and ending in 2006 constitute a continuing violation for the purposes of her hostile work environment claim.

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *National R.R. Passenger Corp. v. Morgan*,

8

536 U.S. 101, 116, 122 S.Ct. 2061, 2074 (2002). Under 42 U.S.C. § 2000e-5(e)(1), a charge must be filed with the EEOC within 180 days of the alleged "unlawful employment practice." Filing a timely charge is a prerequisite to having an actionable claim. Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim "is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 115. Thus, a court may consider "the entire scope of the hostile work environment claim," including behavior alleged outside the 180-day window, "so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.

This "continuing violation" doctrine is limited in three ways. First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. *Id.* at 118, 120. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. *Id.* at 118. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.'" *Id.* at 120 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127).

Stewart asserts that the comments made by Loftin in 2006—that he continued to love her and that they should be sweet to each other—are part of a single hostile work environment claim that commenced when he first harassed her in 2003. If this is so, then under the continuing violation doctrine, the filing requirement is no bar to liability for any harassment that occurred prior to October 29, 2005—180 days before she filed her charge.

As an initial matter, Stewart's claim is timely with respect to the 2006 incidents of alleged harassment, which occurred within the filing period. Conversely, alleged harassment in the pre-October 2004 period (before Stewart was first removed from Loftin's supervision) cannot, standing alone, be a basis of liability. Thus, the question is whether the factual record at summary judgment, viewed in the light most favorable to Stewart, supports a continuing violation.

With respect to relatedness, the 2006 acts alleged by Stewart are sufficiently "related" to those of 2003–04 to constitute a single "practice" for the purposes of 42 U.S.C. § 2000e-5(e)(1). As in *Morgan*, the pre- and post-limitations period incidents involved the same type of harassment and were perpetrated by the same manager, Loftin. 536 U.S. at 120, 122 S.Ct. at 2076. Though the parties dispute the nature of the 2006 acts—MTC implies that, rather than harass Stewart, Loftin attempted to smooth over their previous difficulties—at this stage, we rely on Stewart's description of their contacts,

10

which were similar in kind and frequency to those she alleges occurred in the past.[1] On that basis, the plaintiff has carried her burden.

The two periods of alleged harassment are, however, severed by the intervening acts of Stewart's employer. "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (quoting *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993)). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quoting *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999)). In October 2004, after Stewart reported Loftin's inappropriate conduct to his supervisor, MDOT promptly reprimanded Loftin and, crucially, reassigned Stewart from Loftin's supervision. Stewart concedes that these acts ended Loftin's harassment for a period of sixteen months, until she was brought back under his supervision. They also proved satisfactory, at the time, to Stewart, who declined to pursue other corrective opportunities once she had been reassigned. Further, MDOT's response demonstrates the promptness and appropriateness that we have previously held to constitute prompt remedial

---

[1] That we ultimately find that the 2006 acts, standing alone, were neither severe or pervasive enough to create a hostile work environment is irrelevant to our continuing violation analysis. *See Morgan*, 536 U.S. at 115, 122 S.Ct. at 2073 ("in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.").

11

action as a matter of law. *See Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996) (listing cases).

We reject Stewart's contention that MDOT "negated" any remedial effect of the transfer by assigning Loftin as Stewart's supervisor again in 2006. The proper focus of inquiry is the employer's remedial action in addressing the employee's complaints in the first instance. *Hockman*, 407 F.3d at 329.[2] A subsequent act can be relevant to this inquiry only when it casts doubt on the reasonableness of the remedial action in the context of the employer's policies and practices.[3] In this case, the employer's action was reasonably calculated to end the harassment and, in fact, did so. That the harassment may have resumed due to a subsequent decision entirely unconnected to the remedial action is of no moment. To hold otherwise would cast doubt on the safe harbor of prompt remedial action. Employers might believe that they could only avert liability by firing an alleged harasser, yet the law does not demand such extreme action in every case. Title VII's purpose is remedial, not punitive.

---

[2] Other circuits are in agreement. Greer v. Paulson, 505 F.3d 1306, 1314–15 (D.C. Cir. 2007); Holmes v. Utah, Department of Workforce Services, 483 F.3d 1057, 1064 (10th Cir. 2007); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258–59 (11th Cir. 2003).

[3] *See* Crowley v. L.L. Bean, Inc., 303 F.3d 387, 403–04 (1st Cir. 2002) (not an intervening cause where remedy was not effective).

Because MDOT's prompt remedial action in 2004 was an intervening action under *Morgan*, Stewart may not rely on the continuing violation doctrine to hold MDC liable for any pre-October 2004 harassment.

## C. Hostile Work Environment

Stewart next contends that the district court erred in finding that the alleged 2006 harassment, standing alone, was neither severe nor pervasive enough to create a hostile work environment.

Because any pre-October 2004 harassment cannot constitute a continuing violation in conjunction with the alleged 2006 harassment, Stewart may rely only upon Loftin's 2006 conduct to prove a hostile work environment. Where the claim of harassment is against a supervisor, proving a hostile working environment requires four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Texas Department of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007).

We agree with the district court that Stewart's argument fails on the fourth element. To affect a term, condition, or privilege of employment, "sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *National R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074 (2002). To determine whether conduct is severe or pervasive, we will look to the totality of the circumstances. *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17,23 (1993)). Finally, the conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

Stewart alleges that, in 2006, Loftin said that he and Stewart should be "sweet" to each other and stated that he loved her approximately six times. This conduct occurred over the course of about one month, meaning that Stewart was allegedly subject to one subjectively offensive utterance by Loftin every few days. These occasional statements did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive. This is not the kind of conduct that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace. *See Shepherd v. Comptroller of Public*

*Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (sexual teasing and some touching over a period of two years was "not severe" because it was "not the type of extreme conduct that would prevent [the plaintiff] from succeeding in the workplace."). Objectively, a reasonable person would not find Loftin's actions in 2006 to be offensive enough to constitute a hostile work environment. Thus, the harassment Stewart alleges is insufficient to support her claim.

Stewart urges that Loftin's comments must be placed in the context of his earlier offensive behavior, which precipitated her removal from his supervision. This court has repeatedly approved of the introduction of previous conduct to illuminate currently actionable issues in discrimination and harassment cases. *See, e.g., Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *See also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S. Ct. 1885, 1889 (1977). This does not mean, of course, that the existence of prior conduct or misconduct will necessarily create a fact issue on the actionable events before the court. So it is here. Loftin's isolated 2006 remarks are not objectively severe or pervasive enough to support a genuine issue of sexual harassment, although, given Stewart's previous experience, she found them <u>subjectively</u> offensive. The test for sexual harassment cannot be met solely by bolstering the employee's subjective perception of otherwise benign speech unaccompanied by any physical action against her.

15

## D.  Retaliation

Stewart also contends that there is a genuine issue of material fact as to whether she was subjected to materially adverse actions in retaliation for reporting sexual harassment.

To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  Summary judgment is appropriate if the plaintiff cannot support all three elements.  *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757,769 (5th Cir. 2001).  Stewart satisfied the first element by reporting Loftin's alleged conduct to Bell, an activity protected under Title VII. 42 U.S.C. § 2000e-3(a).

To constitute prohibited retaliation, an employment action must be "materially adverse," one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id*.  Even when an adverse action is intended by the

employer as retaliation, it must still satisfy this materiality standard. *Id.* at 67–68, 126 S.Ct. at 2414 (explaining that Title VII's anti-retaliation provision "protects an individual from not all retaliation").

The parties dispute whether she suffered an adverse employment action. Stewart points to several events: (1) she was placed on administrative leave for three weeks; (2) upon returning, she was reassigned to a new supervisor and given a heavier workload; (3) personal items were taken from her desk; (4) the locks on her office had been changed and she was not allowed to close her office door; and (5) she was chastised by superiors and ostracized by co-workers. As a matter of law, the latter three of these allegations do not rise to the level of material adversity but instead fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that the Supreme Court has recognized are not actionable retaliatory conduct. *White*, 548 U.S. at 68, 126 S.Ct. at 2415. Title VII "does not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). These actions would not dissuade a reasonable employee from making a charge of discrimination.

Placing an employee on paid administrative leave, however, cannot be said to be a "petty slight." Indeed, depending on the circumstances, it may range from a completely benign measure to one that stigmatizes an employee and causes significant emotional distress. Forced leave may even affect an

17

employee's opportunities for future advancement. But "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69, 126 S. Ct. 2405, 2415 (2006). The context here demonstrates that Stewart suffered no adverse impact as a result of being placed on leave. She continued to receive her salary and was not requested to use any accumulated leave time. Only three weeks later, she was reinstated with the same salary. There was no suggestion that the leave was the result of any fault on Stewart's part, such as might carry a stigma in the workplace. Stewart's administrative leave was not, under these circumstances, an adverse action.

Finally, we consider whether Stewart's reassignment to a new supervisor, Travis Boyle, and heavier workload constituted a materially adverse action. Stewart had served as an administrative assistant to Bennett and then Loftin, each of whom oversaw three counties and a few work crews. She was responsible for entering materials usage reports for each of the counties and time sheet information for the workers on the crews. After returning from leave, Stewart was reassigned to work under Boyle, who oversaw fourteen counties and eight crews. Though her position, pay, and hours were unchanged, Stewart's workload increased significantly because of Boyle's greater responsibilities. We have recognized previously that "a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances."

18

*Aryain*, 534 F.3d at 485. Once again, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *White*, 548 U.S. at 71, 126 S.Ct. at 2417 (2006). Stewart's reassignment affected none of her job title, grade, hours, salary, or benefits. Her duties were unchanged, and there is no evidence that she suffered a diminution in prestige or change in standing among her co-workers. *See id.* Indeed, Stewart thrived under Boyle, managing the workload well and receiving a promotion in 2007. Her success confirms that her transfer was not adverse in nature.[4] The reassignment, although imposing more work, carried greater responsibility and would not dissuade a reasonable employee from charging discrimination.

Because MDOT did not take any adverse employment action against Stewart, her retaliation claim fails.

## IV. CONCLUSION

For the reasons discussed above, the district court's summary judgment in favor of MTC is **AFFIRMED**.

---

[4] Stewart points to an alleged admission by a MDOT supervisor, William Parker, that Stewart's workload was increased "because they wanted to get rid of her" and asserts that it raises a genuine issue of material fact that should have defeated summary judgment. The fact is at issue—MTC presents a statement by Parker denying the comment—but it is not material to the question of whether Stewart's transfer, and increased duties, constituted a materially adverse action.

HAYNES, Circuit Judge, concurring and dissenting:

I concur in the majority's opinion save and except Section III.C., from which I respectfully dissent. I would hold that Stewart has raised a material fact issue regarding whether Loftin's conduct created a hostile work environment in 2006, and I would reverse and remand on that issue.

After having been transferred away from her abuser in 2004, Stewart testified that she was amazed to learn that Loftin would again become her supervisor in 2006. Hope springs eternal, and perhaps MDOT thought Loftin had turned over a new leaf. Such hopes were almost immediately dashed when Loftin told Stewart he "was going to be in the office and that [they] were going to be sweet, and [they] were going to have an understanding."[1] Stewart stated in her deposition that "every time [they] were alone together" Loftin indicated that they were "going to be sweet" to each other. As a result, she altered her conduct to avoid him: "I never stayed in my office then, I lived in the bathroom."

The district court analyzed these 2006 incidents as stand-alone conduct. It concluded that, viewed in this isolation, these incidents were not sufficient to support a claim of hostile work environment. I submit that it was error to view the 2006 conduct in isolation.

The majority correctly notes that the grant of summary judgment on the damages caused by the pre-October 2004 conduct does not erase that conduct from the record. To the contrary, the pre-October 2004 evidence, while not independently actionable, is probative of and provides context for the 2006 events. "Evidence concerning a claim that is not on trial . . . does not automatically lose its relevance or probative value to a claim that remains." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 186 (5th Cir. 1999).

---

[1] The facts set forth in this section come from Stewart's deposition. Of course, Loftin may have a different view, and I express no opinion on Stewart's veracity. Credibility determinations, of course, are not the stuff of summary judgment affirmances.

"Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977) (time-barred incidents "may constitute relevant background evidence").

Viewed against the backdrop of what Stewart had already experienced from Loftin, Loftin's 2006 conduct goes from merely boorish to legally actionable. Indeed, Stewart's experiences with Loftin in 2004 and before are exactly why, when Loftin started anew in 2006 with similar comments, Stewart began hiding in the bathroom to avoid an escalation to physical contact[2] and a recurrence of the additional incidents that occurred in 2004. Stewart was certainly justified in concluding that Loftin had not "learned his lesson" and that the 2006 conduct was reminiscent of the prior wrongful conduct. This was not merely Stewart's

---

[2] The majority's statement at the end of Section III.C. that "[t]he test for sexual harassment cannot be met solely by bolstering the employee's subjective perception of otherwise benign speech unaccompanied by any physical action against her" should not be read to suggest that physical contact is necessary for liability to attach. Physical contact is not a required element of a hostile environment claim. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996) (affirming refusal to grant judgment notwithstanding the verdict for employer where the only alleged harassment was verbal); *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271 (5th Cir. 1989) (applying Louisiana law similar to Title VII and reversing summary judgment on the appellant's hostile environment claim where no allegations of physical contact were made); *Donaldson v. CDB, Inc.*, No. 08-60666, 2009 U.S. App. LEXIS 15259, at *21 (5th Cir. July 6, 2009) (unpublished) ("Physical touching is not a requirement in a hostile-work-environment claim, so long as the evidence establishes conduct that is so severe or pervasive as to affect a term, condition, or privilege of employment."); *Jones v. Flagship Int'l*, 793 F.2d 714, 720 (5th Cir. 1986) (setting forth the Fifth Circuit test for hostile work environment claims which requires a plaintiff to show unwelcome sexual harassment in the form of "sexual advances, requests for sexual favors, and other verbal *or* physical conduct of a sexual nature") (emphasis added); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-23 (1993)(finding a hostile work environment claim can arise absent any physical manifestation of injury); *Blackmon v. Pinkerton Security & Investigative Servs.*, 182 F.3d 629, 637 (8th Cir. 1999) (noting that "sexual harassment that does not involve physical contact [is not] per se less serious" than that involving physical contact); *Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 803 (5th Cir. 1999) (Wiener, J. concurring) ("True, sexual comments alone can rise to the level of actionable harassment." (citing *Harris,* 510 U.S. at 21-23 )).

subjective perception but an objectively reasonable conclusion from the 2006 events in the context of what had occurred previously.

In *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992), we held that it was proper to consider time-barred acts of harassment in assessing timely claims. While the court could not award damages for the time-barred incidents, "the district court properly considered evidence of the 1980-82 fear-producing actions in determining whether the 1986 actions amounted to sexual harassment and constructive discharge." *Id.* The same is true here. Considering the 2006 events in light of what we know about Loftin from the "totality of the circumstances," I conclude that there is a fact issue on the 2006 hostile work environment claim and that the district court erred in granting summary judgment on that claim. Accordingly, I respectfully dissent from the majority's contrary holding.