**Stephanie TURNER, Plaintiff–Appellant**

v.

**JACOBS ENGINEERING GROUP, INCORPORATED, Defendant–Appellee.**

No. 11–30476.

United States Court of Appeals,
Fifth Circuit.

April 17, 2012.

Jill Leininger Craft, Law Office of Jill L. Craft, L.L.C., Baton Rouge, LA, for Plaintiff–Appellant.

Christine S. Goldberg, Heather F. Crow, Vasilios Manthos, Attorney, Kullman Firm, Baton Rouge, LA, for Defendant–Appellee.

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM: *

An employee of a technical professional services company brought suit against her

---

* Pursuant to 5TH CIR R. 47.5, the court has    determined that this opinion should not be

employer initially claiming violations of state discrimination and anti-retaliation laws. She later added parallel claims under Title VII. The district court granted summary judgment to the employer on all claims. The employee appeals the district court's ruling on her Title VII retaliation claim. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Jacobs Engineering Group hired Stephanie Turner in April 2006 as an Administrative Services Support Manager in its Baton Rouge, Louisiana office. In that position, Turner was responsible for the administrative services group, which assisted project managers with tasks like completing paperwork and preparing reports. She also oversaw the document control group, which was responsible for updating Jacobs' system with drawings and revisions for different projects. Turner reported to the Manager of Engineering, who was Bill Broussard briefly in early 2008, then Eric Balkom from mid–2008 until the end of Turner's employment.

In May 2008, Turner brought a complaint to Holly Powell in the human resources department regarding unequal pay based on gender discrimination. Turner also contends that she was subjected to several offensive sexual comments during the last six months she worked for Jacobs. Between May and October of 2008, Turner reported to Powell a number of instances of race and gender discrimination directed at other individuals. In June 2008, Turner notified Powell of her concern regarding Jacobs' failure to compensate employees for training sessions conducted during the lunch hour. Also in June 2008, Turner reported to Powell that Broussard was retaliating against her.

In May 2008, Broussard conducted a performance evaluation of Turner. Some ratings of "unsatisfactory" were made. After comments by Turner, the evaluation was amended to remove an unsatisfactory rating in the integrity category. The evaluation urged improvement in understanding the systems and processes of the support services group, in her problem resolution skills, and her candor when implementing decisions that impact subordinates.

In October 2008, an employee in Turner's group complained to Turner's supervisor, Balkom, about Turner. This led Balkom to discuss Turner's performance with his manager, Jere Ducote, Powell, and long-time Jacobs employees in Turner's group. According to Balkom, Turner's subordinates reported that she was "not properly managing the staffing, documents [were] getting behind," and interactions between document control and administrative services were strained. Additionally, Balkom observed that Turner's "two groups were not working together, that [Turner] seemed not to want to deal with people issues, that [Turner] seemed not to understand the roles of the two positions and how they interacted and how they affected the project execution." Balkom created Turner's performance evaluation based on his discussion with Turner's coworkers and subordinates and his own observations. Also in October 2008, Turner informed Powell that she had contacted the EEOC.

Prior to speaking with Turner, Balkom spoke with Powell about an alternate position for Turner. They determined that based on Turner's background in IT and

published and is not precedent except under the limited circumstances set forth in 5TH CIR.

R. 47.5.4.

her inexperience working in the groups she managed, there were no positions to which Jacobs could move Turner. On October 27, Balkom met with Turner to discuss his review and let her know that Jacobs would be terminating her employment.

Turner brought this suit in Louisiana state court in September 2009. Jacobs removed the case to the United States District Court for the Middle District of Louisiana and filed an answer. On February 25, 2011, Jacobs moved for summary judgment as to Turner's state law claims. On March 9, Turner moved for leave to file a supplemental and amended complaint adding parallel claims under Title VII. Leave was granted by the magistrate judge. Jacobs then filed a motion to strike the amended pleadings and for reconsideration before the magistrate judge. The magistrate judge denied the motions and Jacobs appealed to the district court. The district court affirmed the magistrate's order and allowed Jacobs to file an additional motion for summary judgment. Jacobs filed a second motion for summary judgment on April 22. On May 6, 2011, 2011 WL 1743624, the district court granted summary judgment on all of Turner's claims.

## DISCUSSION

We review a district court's decision to grant summary judgment *de novo*. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir.2009). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).

Turner argues that the district court erred in dismissing her Title VII retaliation claim. Specifically, Turner argues that the district court failed to infer knowledge of the decision maker and failed to find she had presented sufficient evidence to show pretext. Jacobs argues the district court's order should be affirmed for these reasons: (1) Turner should not have been allowed to amend her complaint to bring this claim; (2) Turner failed to satisfy her prima facie case; and (3) Turner failed to show Jacobs' legitimate, nonretaliatory reason was pretext. Because we conclude that Turner failed to establish a prima facie case, we do not address Jacobs' alternative contentions of improper amendment of the complaint or that Turner failed to show pretext.

To withstand summary judgment on her Title VII retaliation claim, Turner must demonstrate that (1) she participated in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between her protected conduct and the adverse employment action. *Stewart*, 586 F.3d at 331. Jacobs does not contest that Turner engaged in a protected activity by filing various complaints with HR nor does it contest that Turner suffered an adverse employment action when her employment was terminated. The appeal centers on whether Turner can demonstrate a causal connection between the protected activity and the adverse employment action.

■ Turner offers the following as evidence of a causal connection between her protected conduct and the termination of her employment at Jacobs: (1) that her employment was terminated within a matter of days of reporting to Powell that she had contacted the EEOC; (2) that Balkom met with Ducote and Powell, both of whom had knowledge of her complaints prior to meeting with Turner; (3) that Balkom stated that she was "not a team player" despite a positive review in leadership five months before; (4) that her final performance review was riddled with inconsisten-

cies; and (5) that Balkom had not questioned Turner about coworker complaints or reviewed her previous goals. Additionally, Turner offered evidence that Jacobs did not follow its typical policy and procedure in terminating Turner's employment. Turner also argues that she has presented sufficient evidence that Balkom ˒was the "cat's paw" because he consulted with Powell and Ducote prior to terminating Turner's employment. *See Staub v. Proctor Hosp.,* —— U.S. ——, 131 S.Ct. 1186, 1190, 179 L.Ed.2d 144 (2011).[1]

Turner must present at least some evidence that the decision maker was aware of the protected activity. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 883 & n. 6 (5th Cir.2003). To prove this awareness, Turner relies solely on evidence that Balkom met with Powell and Ducote. From this, Turner argues that the court should infer knowledge. Turner acknowledges that she never brought any complaints to Balkom and that Balkom stated her termination was not based on any claims brought to the attention of HR. In his deposition, Balkom stated that he did not have any knowledge of Turner's EEOC complaint or other complaints to HR. Turner does not allege that she knows that Balkom was told of her complaints, only that we may infer that Balkom had knowledge.

Although Turner states that she has come forth with evidence that Balkom exhibited hostility to her, she only points to his statement in her final performance review that she was "not a team player." Although this statement could refer to Turner's complaints to HR, the performance review noted another potential basis for that comment in the "Management and Leadership" section. The review stated that Turner "[d]oes not provide adequate direction to staff. Does not support of the team. Does not seem to be aware of how the document control and PAA groups should function." Turner urges us to infer from this single team-player comment during her final performance review and Balkom's discussion of Turner's performance with other Jacobs employees that Balkom knew about her complaints and that knowledge contributed to his determination to terminate her employment. We must draw only reasonable inferences in Turner's favor. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007). On this record, it is not reasonable to infer that Balkom knew about Turner's protected activity from one comment about being a team player and general conversations with other employees.

■ In the alternative, Turner argues that Balkom is the "cat's paw." *See Staub,* 131 S.Ct. at 1190. In *Staub,* though, the plaintiff provided evidence that two supervisors made regular reports motivated by antimilitary animus which resulted in termination upon later review by an employee not shown to have that animus. *Id.* at 1191. The court held that where "a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id.* at 1194 (emphasis omitted).

Turner does not allege that the employee who complained to Balkom about her conduct as manager or the employees Balkom contacted to discuss her employment had knowledge of her protected activity or had any retaliatory motive. Furthermore,

---

1. A "cat's paw" case is one in which an employee seeks to hold his or her "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Id.*

Turner does not present any evidence that Powell or Ducote had performed any act motivated by retaliatory animus, which was the proximate cause of Balkom's decision to terminate Turner's employment. *Staub* does not support Turner's argument.

AFFIRMED.