# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2010

No. 09-10826

Lyle W. Cayce
Clerk

STORMY MAGIERA,

Plaintiff - Appellant

v.

CITY OF DALLAS,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-1023

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Stormy Magiera appeals the district court's grant of summary judgment in favor of the City of Dallas ("the City") on her retaliation claim. We REVERSE the district court's grant of summary judgment and REMAND for further proceedings on the limited question of whether the City retaliated against Magiera for complaining of sexual harassment by removing her from field training officer duties. In all other respects, we AFFIRM.

## I. Factual & Procedural Background

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-10826

Magiera was hired by the City as a police officer in September 2000. On May 21, 2005, Magiera responded to the sound of a gunshot being fired in the parking lot of a nightclub. Sergeant Dexter Ingram arrived at the scene shortly thereafter and, while attempting to restore order, referred to Magiera as "darling" and touched her arm. After Magiera asked Sergeant Ingram to refrain from calling her "darling" or touching her, Sergeant Ingram turned to Sergeant Kevin Harris, Magiera's supervisor, and said, "come talk to your girl [be]cause I can't." Officer Magiera asked Sergeant Harris for a control number to file a complaint with Internal Affairs. Sergeant Harris refused. Later that evening, Sergeant Harris and Sergeant Richard Forness removed Magiera from patrol duties and informed her that she could be sent home for requesting a control number. Magiera went home on leave. The next day, Magiera filed a complaint with Internal Affairs, alleging sexual harassment and retaliation. According to Magiera, word of her complaint spread around the department, and other officers began treating her poorly.

On February 27, 2006, Magiera filed a charge of discrimination and retaliation with the EEOC. After receiving notice of her right to sue from the EEOC, Magiera filed the instant action in state court, asserting that the City subjected her to retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act of 1983, Texas Labor Code § 22.001 *et seq.*[1] The City timely removed the action to federal court.

Magiera twice amended her complaint, alleging that, after she complained of sexual harassment and retaliation, other officers began "clicking" her over the radio and refused to partner with her; she was denied overtime assignments; she

---

[1] Magiera also claimed that she was subjected to sexual harassment and that the City deprived her of substantive due process by interfering with her employment. Magiera has since abandoned those claims and alleges only retaliation on appeal.

No. 09-10826

was subjected to unnecessary questioning and intimidation when she applied for lateral transfers; she was never given detective work; she was subjected to more intense scrutiny in Internal Affairs investigations; and she was denied the opportunity to work as a field training officer ("FTO").

The City moved for summary judgment. The district court concluded that Magiera had failed to show that she suffered a materially adverse action, that retaliation was the cause-in-fact of her alleged injuries, or that the City's proffered legitimate, non-discriminatory reasons for the retaliatory actions were pretextual. The district court then granted the City's motion for summary judgment. Magiera timely filed the instant appeal.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir. 2009). When reviewing a grant of summary judgment, we view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

## III. Discussion

A.    Evaluative Framework

The parties agree that this case is governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973).[2] Under that framework, a plaintiff establishes a prima

---

[2] In her briefs, Magiera argues that she has presented direct evidence of retaliation; however, at oral argument, Magiera's attorney stated that Magiera was seeking recovery solely under a *McDonnell Douglas* theory of liability. For that reason, we consider the purported direct evidence of retaliation as part of her *McDonnell Douglas* claim and do not evaluate this evidence under any other theory of liability.

No. 09-10826

facie case of retaliation by showing that: "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart*, 586 F.3d at 331. If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the employer satisfies its burden of production, the plaintiff must prove that the City's proffered legitimate, non-discriminatory reason is pretext for a retaliatory purpose. *Id.* In doing so, the plaintiff must prove that "the adverse employment action taken against [her] would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

B.    Summary Judgment Was Properly Granted on Five of the Six Grounds

Magiera asserts that she suffered retaliation for complaining of sexual harassment when (1) her supervisors sent her home from work after she requested a control number; (2) other officers "clicked" her on the radio and refused to partner with her; (3) Internal Affairs investigated complaints lodged against her with heightened scrutiny; (4) she was treated more harshly in interviews and denied lateral transfers; (5) she was denied overtime assignments; and (6) she was denied the opportunity to serve as an FTO.

The first five of these actions are not materially adverse actions.[3] To demonstrate that a retaliatory action was "materially adverse," Magiera must show that the action "might have dissuaded a reasonable worker from making

---

[3] Magiera erroneously asserts that the question of material adversity is always for the jury to decide. While a determination of material adversity is dependent upon the circumstances, we have frequently held, as a matter of law, that a challenged action is not materially adverse. *See Stewart*, 586 F.3d at 332 ("As a matter of law, . . . these allegations do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct.") (citation omitted).

or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). The materiality standard is intended "'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart*, 586 F.3d at 331 (quoting *Burlington*, 548 U.S. at 68)). Even if the employer took an adverse action with the intent to retaliate against the employee, the adverse action must satisfy the materiality requirement to be actionable. *Id*. Whether an alleged act of retaliation is material depends upon the particular circumstances. *Burlington*, 548 U.S. at 69.

On their face, the first three acts of alleged retaliation fail to satisfy the materiality standard.[4] With respect to the fourth and fifth, although being denied lateral transfer opportunities and overtime assignments could be a materially adverse action, Mageria produced no evidence regarding the positions that she applied for, the dates that she submitted applications, or any explanation why the denial of these opportunities negatively affected her status, benefits, prestige, or responsibilities. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden [on summary judgment in an employment discrimination case]."). While this court has recognized that a lateral transfer, under certain

---

[4] While this court has recognized that being sent home on administrative leave may constitute a materially adverse action, *see McCoy v. City of Shreveport*, 492 F.3d 551, 560-61 (5th Cir. 2007), Mageria conceded in her deposition that she was never placed on administrative leave for requesting a control number and that no disciplinary action was taken by the City. Because we conclude that Magiera did not suffer a materially adverse action when she was sent home from work, we need not address the City's argument that Magiera did not engage in protected activity when she requested a control number from her supervisor.

circumstances, may be an adverse action, *Aryain*, 534 F.3d at 485, there is no evidence that Magiera suffered such an adverse action here.  *See Stewart*, 586 F.3d at 332 ("Stewart's reassignment affected none of her job title, grade, hours, salary, or benefits.  Her duties were unchanged, and there is no evidence that she suffered a diminution in prestige or change in standing among her co-workers.").  Accordingly, we conclude that Magiera has failed to establish a prima facie case of retaliation for these actions.

C.    Summary Judgment Should Have Been Denied on the Sixth Ground—Magiera's Removal from FTO Duties

In contrast, the sixth ground—the City's decision to remove Magiera from FTO duties—was a materially adverse action.  Magiera introduced evidence—and the City conceded at oral argument—that she received less compensation as a result of being removed from FTO duties.  Because the parties agree that the decision to remove Magiera from FTO duties constitutes a materially adverse action, we focus the remainder of our inquiry on whether Magiera has presented sufficient evidence from which a reasonable jury could conclude that the City removed her from FTO duties because she complained of sexual harassment.

1. Magiera's Prima Facie Case

Magiera asserts that she was removed from FTO duties because her supervisor, Lieutenant Dale Barnard, learned that she had filed a Title VII lawsuit.  In support of this assertion, Magiera presented the statement of Sergeant Kay White, who testified that she was told by her supervisor, Lieutenant Michael Woodbury, that Magiera was not serving as an FTO because Lieutenant Barnard was angry that Magiera had filed a discrimination lawsuit. Magiera also asserts that White sent her a text message stating, "I was told by [W]oodbury that [B]arnard said you had a law suit against the city and you shouldnt [sic] train because of the suit." According to Magiera, these statements

prove that she was removed from FTO duties because she filed a Title VII complaint.

The City asserts that White's statement is not competent summary judgment evidence because it is based on hearsay. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56). For the statement to be admissible, Sergeant White would have to testify to what she was told by Lieutenant Woodbury that Lieutenant Barnard told him. This testimony would be "double hearsay" unless each statement were not hearsay or were subject to a hearsay exception. Magiera asserts that White's statement is admissible as non-hearsay because each of the statements is an admission by a party-opponent. *See* FED. R. EVID. 801(d)(2)(D) (stating that admissions by a party-opponent are not hearsay if "[t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship").

We agree. Lieutenant Barnard's statement, if true, is admissible under the party-opponent exception because Lieutenant Barnard was speaking in the course of his employment.[5] Magiera asserts—and the City does not dispute—that Woodbury and White were tasked with assigning eligible officers to particular FTO shifts. Therefore, their discussion regarding why Officer Magiera was prohibited from training may be considered "a matter within the course of their agency or employment," rather than mere water-cooler gossip. *See Wilkerson v. Columbus Separate Sch. Dist.*, 985 F.2d 815, 818 & n.11 (5th

---

[5] The parties dispute whether Lieutenant Barnard made the ultimate decision to remove Magiera from FTO duties. The City argues that Deputy Chief Easterling was the final decisionmaker regarding Magiera's removal from field training duties. Nonetheless, the City concedes that Lieutenant Barnard was involved in the decision to remove Magiera from FTO duties.

Cir. 1993) (holding that statements by school employees containing otherwise double hearsay were admissible under Federal Rule of Evidence 801(d)(2)(D) as admissions by agents of the school). Considering this evidence in the light most favorable to Magiera, we conclude that she has established a prima facie case of retaliation on this ground.[6]

### 2. The City's Proffered Legitimate, Non-Discriminatory Reasons

In response, the City asserts that Magiera was removed from FTO duties for medical reasons and because she lacked the proper temperament to serve as a training officer. The City presented the testimony of Deputy Chief Easterling in support of its claim that Magiera was removed from FTO duties because she had suffered two seizures and was on non-driving status. The City also presented the testimony of Lieutenant Barnard who stated that he recommended Magiera be removed from training because of her seizures and because she lacked the proper temperament to serve as an FTO. We conclude that these reasons, if true, would be legitimate, non-discriminatory reasons.

### 3. Magiera's Showing of Pretext

Magiera argues that the City's proffered legitimate, non-discriminatory reasons for removing her from FTO duties are pretextual. In particular, Magiera asserts that the City's reasons lack credibility because she was allowed to serve as an FTO after she had suffered seizures and was placed on non-driving status. Indeed, Magiera argues that she was allowed to serve as an FTO even after Lieutenant Barnard recommended that she be prohibited from

---

[6] The district court never explicitly ruled on the admissibility of these statements. Our conclusion today that the evidence, as it is contained in the record and argued before this court, is competent summary-judgment evidence is not intended to foreclose a future ruling on the admissibility of such testimony at trial or in other further proceedings in the context of future-developed facts and the issues presented at such proceedings. Similarly, our conclusion today does not establish the authenticity of the text message allegedly sent from White to Magiera; instead, we conclude that White's statement to Magiera may be considered in evaluating whether the district court's grant of summary judgment was proper.

serving as an FTO because of her alleged poor temperament and medical condition. Magiera points out that it was not until three days after the City was served with her Title VII complaint that she was removed from her duties as an FTO. According to Magiera, the logical inference from this evidence is that Lieutenant Barnard learned of Magiera's complaint and chose to retaliate against her by removing her from FTO duties.

This court has observed that "the combination of suspicious timing with other significant evidence of pretext[ ] can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). In this case, the close timing between the filing of Magiera's Title VII complaint and her removal from FTO duties, combined with the fact that she was initially allowed to serve as an FTO, is sufficient to create a genuine issue of material fact on the falsity of the City's proffered justifications for removing Magiera from FTO duties.[7] The fact that Magiera was given an FTO shift after the City learned of her seizures and after Lieutenant Barnard questioned her temperament creates a genuine issue of material fact as to whether the City removed Magiera from FTO duties for these proffered reasons. Accordingly, the district court erred by granting the City summary judgment on Magiera's claim that the City retaliated against her by removing her from FTO duties.

## IV. Conclusion

Because we conclude that a genuine issue of material fact exists as to whether the City retaliated against Mageria for filing a Title VII complaint by removing her from FTO duties, we REVERSE the district court's grant of

---

[7] Magiera also argues that the City's proffered medical justification for removing her from FTO duties is pretextual because two other officers were allowed to serve as FTOs after suffering seizures. We need not decide whether the other two officers are similarly situated to Magiera because we conclude that Magiera has presented sufficient evidence at this stage from which a jury could reasonably conclude that the City's proffered reasons for removing her from FTO duties are pretextual.

No. 09-10826

summary judgment and REMAND for further proceedings on this narrow issue; we AFFIRM the remainder of the district court's judgment.