EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Abigail Rosado Reyes Recurrida v. Global Healthcare Group, LLC Peticionaria | Apelación 2020 TSPR 136 205 DPR _____ |
|---|---|

Número del Caso: AC-2019-1

Fecha: 6 de noviembre de 2020

Tribunal de Apelaciones:

    Región Judicial de San Juan-Caguas, Panel III

Abogados de la parte peticionaria:

    Lcdo. Pedro A. Busó García
    Lcda. María E. Echenique-Arana

Abogado de la parte recurrida:

    Lcdo. Wilfredo Luciano Quiñones

Materia: Derecho probatorio - Una impresión (printout) de cierto contenido en una página web puede autenticarse mediante la identificación de características distintivas o mediante el testimonio de un testigo con conocimiento, según dispuesto en la Regla 901 de Evidencia, 32 LPRA Ap. VI. Asimismo, una impresión de página web no constituye prueba de referencia cuando se presenta para probar una admisión de parte en un medio electrónico al amparo de la Regla 803(a) de Evidencia, 32 LPRA Ap. VI.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Abigail Rosado Reyes

    Recurrida

       v.                    AC-2019-0001

Global Healthcare Group, LLC

    Peticionaria

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 6 de noviembre de 2020.

Debemos evaluar si el Tribunal de Apelaciones actuó correctamente al revocar el dictamen sumario que emitió el foro primario tras concluir que existe controversia real y sustancial de hechos materiales en este caso. En particular, nos corresponde analizar si un anuncio que publicó el patrono querellado en una página web controvierte la justificación alegada para el despido de la empleada cesanteada. Veamos.

I

El 13 de abril de 2016 la señora Abigail Rosado Reyes (querellante o señora Rosado Reyes) presentó una querella al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 et seq. (Ley Núm. 2), contra

Global Healthcare Group, LLC (Global) sobre despido injustificado y pago del bono de Navidad.[1] El 7 de julio de 2016 Global contestó la querella y admitió que la señora Rosado Reyes laboró en la compañía como Técnico de Farmacia en el Federal Bureau of Prisons (FBP), específicamente en la farmacia del Metropolitan Detention Center de Guaynabo (MDC). No obstante, añadió que tuvo que prescindir de sus servicios debido a que en enero de 2016 el MDC perdió la licencia de farmacia que expide el Departamento de Salud de Puerto Rico.

El 8 de diciembre de 2016 se celebró la Conferencia con Antelación al Juicio, en donde el Tribunal de Primera Instancia convirtió el procedimiento al trámite ordinario.[2] Luego, y tras varias incidencias procesales, el 20 de abril de 2017 Global presentó una *Moción de sentencia sumaria*.[3] Adujo que no había controversia de hechos materiales ya que la falta de la licencia de farmacia fue justa causa para el despido de la querellante. En síntesis, alegó como hechos no controvertidos que: (1) la señora Rosado Reyes laboró como Técnico de Farmacia en la farmacia de MDC y era responsable de preparar y despachar medicamentos y manejar el inventario; (2) MDC perdió su licencia para operar la farmacia; (3) como resultado de lo anterior, el puesto de Técnico de Farmacia se eliminó y Global despidió a la señora Rosado Reyes; (4) esta era la

---

[1] Global es una compañía que se dedica a proveer y reclutar profesionales en el área de la salud para diferentes entidades públicas y privadas.

[2] *Minuta*, Apéndice, págs. 14-15. Surge de la *Minuta* que ninguna de las partes expresó oposición o inconformidad con la conversión.

[3] *Moción de Sentencia Sumaria*, Apéndice, págs. 69-143.

única que ocupaba ese puesto, y (5) luego del despido, Global no contrató a otros empleados para ejercer el puesto de Técnico de Farmacia.[4] Global sustentó estas alegaciones con una declaración jurada que prestó Melanie Donham, la Directora de Cumplimiento de Global, en la cual declaró que: (1) en enero 2016, MDC perdió su licencia para continuar la operación de la farmacia; (2) a raíz de ello, la farmacia MDC no pudo continuar dispensando medicamentos y se despidió a la señora Rosado Reyes; (3) se eliminó el puesto de Técnico de Farmacia que ocupaba Rosado Reyes, y (4) Global no contrató a ninguna otra persona para ese puesto posteriormente.[5]

El 11 de mayo de 2017 la querellante presentó una *Réplica a Moción de Sentencia Sumaria* (Oposición).[6] Arguyó que había controversia de hechos, pues no se logró establecer si el despido ocurrió por razón de la alegada pérdida de la licencia. Particularmente, señaló que los siguientes hechos materiales estaban en controversia: (1) si en o alrededor de enero 2016 el MDC perdió su licencia para operar, lo que provocó que no pudiera continuar operando en el despacho de medicamentos; (2) si el 21 de enero de 2016 se eliminó el puesto de técnico de farmacia y ello provocó que la querellante fuera cesanteada, ya que ante la pérdida de la licencia del MDC de Guaynabo, ese centro no podía operar la dispensa de medicamentos; (3) si, luego del despido de la señora Rosado Reyes y hasta el

---

[4] Íd. pág. 81.
[5] *Declaración Jurada Melanie Donham*, Apéndice, pág. 83.
[6] *Réplica a Moción de Sentencia Sumaria*, Apéndice, págs. 144-162.

día en que se presentó la Oposición Global no contrató ni ha contratado a otro empleado para ocupar el puesto de técnico de farmacia, y (4) si se eliminó la posición de técnico de farmacia que ocupaba la querellante. En apoyo a lo anterior, acompañó a la Oposición una declaración jurada que suscribió la querellante en la que aseguró que el 25 de enero de 2016 **–5 días después de su despido–** Global publicó un anuncio en su página web mediante el cual informó sobre una oportunidad de empleo como Técnico de Farmacia con la compañía. La querellante anejó una copia de este anuncio a la declaración jurada.[7] El anuncio contiene la siguiente información:

[LOGO]

> Global Empire, LLC (GHG) is a Healthcare Staffing Company specialized in providing reliable and qualified healthcare professionals for Government contracts nationwide.
>
> We are seeking an experienced Pharmacy Technician for an available contract opportunity to provide services for the Metropolitan Detention Center, located in Guaynabo, Puerto Rico.
>
> Available Position: Pharmacy Technician
>
> Place Of Performance: Metropolitan Detention Center, Guaynabo, PR 00922.
>
> Basic Scope of Work (Includes but is not limited to): Performs pharmacy technician duties similar in nature to duties performed in a civilian organization.
>
> [. . .]
>
> Job application link:
> http://ghg.catsone.com/careers

---

[7] También incluyó unas capturas de pantalla ("screenshots") de mensajes de texto que intercambió con la Lcda. Martínez, farmacéutica y supervisora de la querellante. *Escrito de Transcripción a Deposición*, págs. 29-30, 35.

> Ana Rowling
> Recruiter Manager
> GHG
> 2151 Linglestown Road, Suite 180
> Harrisburg, PA 17110
> Email: jobs@ghgpa.com
>
> Online job application link:
> http://ghg.catsone.com/careers
>
> [. . .][8]

Del anuncio surge que este se publicó el 25 de enero de 2016.[9] Además, en la esquina inferior izquierda del anuncio aparece la información de la persona contacto a quien se debe dirigir la solicitud de empleo. La persona identificada en el anuncio es la Sra. Ana Rowling, la "*Recruiter Manager*" de Global.[10] La señora Rosado Reyes explicó que la Sra. Ana Rowling era su supervisora en Global desde los Estados Unidos y fue la persona que le comunicó el despido por la alegada falta de licencia.[11]

Global presentó una *Réplica a la Oposición a Moción de Sentencia Sumaria* en la cual sostuvo que las alegaciones de la querellante en su Oposición están sustentadas por documentos que no se produjeron en el descubrimiento de prueba y que son inadmisibles por ser prueba de referencia.[12] Además, expresó que, de ser admisibles, carecen de valor probatorio, pues no controvierten los hechos que esta alegó en la *Moción de Sentencia Sumaria*. No obstante, el 12 de junio de 2017 la

---

[8] Apéndice, pág. 153.
[9] Íd.
[10] Íd.
[11] *Escrito de Transcripción a Deposición*, Apéndice, págs. 128 (líneas 8 y 9) y 131.
[12] *Réplica a la Oposición a Moción de Sentencia Sumaria*, Apéndice, págs. 163-172.

señora Rosado Reyes presentó una *Dúplica a la Réplica a Oposición a Moción de Sentencia Sumaria*.[13] Sostuvo que el anuncio de Internet demuestra que la farmacia continuaba operando, por lo que aún estaba en controversia si su despido se debió a una falta de licencia.

El **22 de diciembre de 2017** el Tribunal de Primera Instancia notificó una *Sentencia Parcial* en la que declaró con lugar la *Moción de Sentencia Sumaria* que presentó Global.[14] Concluyó que la señora Rosado Reyes no presentó evidencia para controvertir la declaración jurada de la señora Donham. Además, señaló que los documentos que la señora Rosado Reyes intentó utilizar para controvertir las alegaciones son "prueba de referencia y meras suposiciones y conjeturas de la querellante, y no prueba admisible que tengan el efecto de controvertir los hechos […]".[15]

En desacuerdo, el 28 de diciembre de 2017 la señora Rosado Reyes presentó una *Moción de Reconsideración*.[16] El Tribunal de Primera Instancia concedió a Global un término de veinte (20) días para que presentara su oposición.[17] El 6 de febrero de 2018 el foro primario notificó una Resolución en la cual proveyó no ha lugar a la solicitud de reconsideración.[18] Inconforme, el **20 de febrero de 2018** la señora Rosado Reyes acudió ante el Tribunal de Apelaciones y planteó que el foro primario erró al

---

[13] *Dúplica a la Réplica a Oposición a Moción de Sentencia Sumaria*, Apéndice, págs. 185-187.
[14] *Sentencia Parcial*, Apéndice, págs. 33-46.
[15] *Íd.*, pág. 44.
[16] *Moción de Reconsideración*, Apéndice, págs. 47-53.
[17] *Oposición a Moción de Reconsideración*, Apéndice, págs. 55-60.
[18] Apéndice, pág. 61.

concluir que medió justa causa para el despido y declarar con lugar la solicitud de sentencia sumaria.

El **4 de diciembre de 2018** el Tribunal de Apelaciones notificó una Sentencia en la cual revocó la determinación del Tribunal de Primera Instancia.[19] Razonó que el anuncio de Internet que presentó la señora Rosado Reyes es prueba admisible capaz de refutar el hecho de que el MDC eliminó el puesto de técnico de farmacia y que ello constituyó justa causa para el despido de la querellante. Concluyó que el Tribunal de Primera Instancia erró al determinar que no existía controversia de hechos materiales y al disponer de la acción mediante sentencia sumaria. Además, señaló que ambas partes cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, infra.

En desacuerdo, Global recurrió ante este Tribunal el **3 de enero de 2019.** En síntesis, señaló que el foro apelativo intermedio abusó de su discreción y se excedió en su facultad revisora al ignorar hechos materiales que no estaban en controversia. Además, sostuvo que el Tribunal de Apelaciones erró al usar como fundamento un anuncio de Internet que no es admisible en evidencia.

Por su parte, el 14 de enero de 2019 la señora Rosado Reyes presentó una *Moción para Desestimar* en la que alegó que Global presentó el recurso fuera del término jurisdiccional que la Ley Núm. 2, supra, establece para recurrir de una determinación del Tribunal de Apelaciones. El 30 de enero de 2019, Global presentó una *Oposición a la*

---

[19] *Sentencia*, Apéndice, págs. 209-224.

*Moción para Desestimar* en la que indicó que el caso se estaba ventilando por la vía ordinaria desde el 2016 luego de que, en la Conferencia con Antelación a Juicio, el Tribunal de Primera Instancia así lo dispusiera.

Con relación a los méritos del caso la querellante se sostiene en los señalamientos que argumentó ante el foro apelativo intermedio. En síntesis, arguye que el anuncio que Global publicó en su página web es admisible en evidencia. Además, alega que el hecho de que Global realizó gestiones para conseguir un sustituto de la señora Rosado Reyes es evidencia circunstancial que controvierte la ausencia de licencia que Global alegó como justificación para su despido.

Con el beneficio de las comparecencias, resolvemos.

II

A. Jurisdicción

Este Tribunal ha manifestado que "[u]na vez que se presenta una querella en virtud del procedimiento sumario de la Ley 2, el tribunal tiene la discreción para decidir si la querella debe seguir el trámite sumario o si debe continuar por la vía ordinaria". Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 270 (2018). Por consiguiente, "mientras el foro de instancia no emita una decisión relativa a que el caso debe continuar por la vía ordinaria, se debe entender que el caso sigue el procedimiento sumario". Íd., (citando a C. Zeno y V.M. Bermúdez Pérez, Tratado de Derecho del Trabajo, San Juan, Pubs. JTS, T. I, 2003, pág. 316).

En este caso, durante la Conferencia con Antelación al Juicio el Tribunal de Primera Instancia, en el ejercicio de su discreción, convirtió el caso al trámite ordinario. No surge de la *Minuta* que las partes objetaran o se opusieran a la decisión del tribunal. Además, los autos del foro primario demuestran que el pleito, en efecto, se tramitó de forma ordinaria sin objeción de las partes. Por tanto, no tiene razón la señora Rosado Reyes cuando arguye que el recurso se presentó de forma tardía porque aplican los términos del procedimiento sumario.

La querellante pretende que, ante el reclamo de Global, rechacemos los términos que aplican a trámites ordinarios a pesar de que ella se benefició de estos para solicitar la reconsideración del dictamen del foro de instancia. Un proceder que, de por sí, es totalmente incompatible con el trámite sumario.[20] Patiño Chirino v. Parador Villa Antonio, 196 DPR 439 (2016). Tras presentar la moción, el foro primario concedió a Global un término para presentar su oposición. Finalmente, denegó la solicitud.

Si aceptáramos el argumento de la querellante sobre el carácter sumario del trámite, su recurso de apelación ante el Tribunal de Apelaciones hubiese sido tardío, ya que el foro primario notificó la *Sentencia parcial* el 22 de diciembre de 2017 y esta acudió al Tribunal de Apelaciones el 20 de febrero de 2018. La señora Rosado

---

[20] Este tribunal en Patiño Chirino v. Parador Villa Antonio, supra, concluyó que la moción de reconsideración es incompatible con el procedimiento sumario laboral provisto por la Ley Núm. 2, supra.

Reyes no puede argüir que el procedimiento era sumario cuando, precisamente, se aprovechó de los mecanismos y términos de un trámite ordinario. En vista de lo anterior, resolvemos que en este caso aplican los términos ordinarios para recurrir ante este Tribunal. Así pues, el recurso de Global se presentó oportunamente y ostentamos jurisdicción para atenderlo.

**B. Moción de sentencia sumaria**

La sentencia sumaria tiene como propósito la búsqueda de soluciones rápidas, justas y económicas en aquellos casos donde, tras contar con la evidencia necesaria, no exista una controversia sustancial de hechos que amerite la celebración de un juicio. Lugo Montalvo v. Sol Melía Vacation Club, 194 DPR 209, 225 (2015); Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Cualquiera de las partes puede solicitar al Tribunal que se dicte sentencia sumaria al amparo de la Regla 36 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V. Para ello, la parte promovente deberá demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes […]". 32 LPRA Ap. V, R. 36.1, 36.2. De esta manera, se vela por el balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. Mejías v. Carrasquillo, 185 DPR 288, 300 (2012). La parte promovida tiene la facultad de oponerse a la solicitud de la sentencia sumaria. Como requisito, debe señalar y refutar específicamente los hechos que entiende están en

controversia y acompañarlos con evidencia admisible que así lo demuestre. SLG Zapata Berríos v. J.F. Montalvo Cash & Carry Inc., 189 DPR 414, 432 (2013).

La Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, faculta al Tribunal a dictar sentencia sumaria a favor del promovente si el promovido no ha respondido de forma detallada. No obstante, el no oponerse a la solicitud de sentencia sumaria no es óbice para que el Tribunal falle contra el promovente. Íd. Entiéndase, la sentencia sumaria "puede dictarse a favor o en contra del promovente, según proceda en derecho". Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 DPR 563, 575 (1997). Se dictará sentencia sumaria cuando "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente […]". 32 LPRA Ap. V, R. 36.3(e); Pérez Vargas v. Office Depot/Office Max, Inc., 203 DPR ___ (2019). Así pues, el criterio rector para dictar sentencia sumariamente es la ausencia de hechos esenciales en controversia. Rodríguez García v. UCA, 200 DPR 929, 941 (2018).

Hemos resuelto que "el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria". Meléndez González v. M. Cuebas, 193 DPR 100, 118 (2015); Vera v. Dr. Bravo, 161 DPR 308, (2004). Por ello,

el Tribunal de Apelaciones "está regido por la Regla 36 de Procedimiento Civil, supra, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario". Íd. El Tribunal de Apelaciones debe hacer una revisión "de novo y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". Íd.

En particular, el juzgador debe analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos. Este análisis se debe guiar por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria. Ramos Pérez v. Univisión, supra. Si de los documentos acompañados surge duda sobre la existencia de una controversia de hechos, estas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 610 (2000).

**C. Evidencia electrónica**

Este Tribunal no ha tenido aún la oportunidad de expresarse en torno a los requisitos de autenticación y admisibilidad de evidencia electrónica. Sin embargo, las Reglas de Evidencia de 2009, 32 LPRA Ap. VI, contemplan expresamente que las partes utilicen este tipo de evidencia para probar sus casos. A esos efectos, la Regla 1001 de Evidencia dispone:

Para propósitos de este capítulo los siguientes términos tendrán el significado que a continuación se indica:

(A)    Escritos o grabaciones: Consiste en letras, palabras, números, sonidos o sus equivalentes, por medio de escritura manual, maquinilla, **en computadora**, grabación mecánica o **electrónica**, micrografía, microfilmación, **impresión**, fotocopia, fotografía o impulso magnético, u otra forma de compilación de datos.

(B)    Fotografías: Incluye la reproducción mediante fotografías, películas de rayos X, películas cinematográficas, videomagnetofónicas, **digitales** u otras técnicas de reproducción de imágenes.

(C)    Original: Original de un escrito o grabación es el escrito o grabación mismo o cualquier contraparte de [e]stos, siempre que la intención de la persona que los ejecuta o emita sea que [e]stos tengan el mismo efecto que aquellos. El original de una fotografía incluye su negativo o archivo digital, y cualquier ejemplar positivo obtenido de [e]ste. **Es también un original, el impreso legible que refleja con precisión la información que haya sido almacenada o acumulada o producida en computadora o artefacto similar.**

(D)    Duplicado: Copia o imagen producida por la misma impresión que el original, o por la misma matriz o por medio de fotografía, incluyendo ampliaciones y miniaturas, o por regrabaciones mecánicas, **electrónicas o digitales** o por reproducciones químicas, digitales o por otras técnicas equivalentes que reproduzcan adecuadamente el original.[21]

---

[21] 32 LPRA Ap. VI, R. 1001 (Énfasis suplido). Según el Informe que rindió el Comité Asesor Permanente de las Reglas de Evidencia, estas enmiendas:

[…] responden a la necesidad de adaptar las definiciones de la Regla a los cambios y avances tecnológicos surgidos en los últimos años, para que incluyan y hagan mención expresa a lo que en su día podría ser ofrecido en los tribunales como evidencia […] Por ello, es necesario dotar el texto de las Reglas con un lenguaje que sea consistente y flexible, de manera que se ajuste a los nuevos cambios en el mundo de la tecnología e informática.

En términos generales, la evidencia electrónica es aquella información que es creada, almacenada o compartida a través de un dispositivo o sistema electrónico. V.I. Neptune Rivera, La Evidencia Electrónica, Autenticación y Admisibilidad, San Juan, Ediciones Situm, 2017, pág. 2. Según surge de la Regla 1001 de Evidencia, supra, la información electrónica puede ser audio, visual, escrita y/o gráfica.[22] Los tribunales de Puerto Rico ya se han enfrentado a diferentes tipos de evidencia electrónica, entre ellas: correos electrónicos, mensajes de texto, cámaras de seguridad, páginas web, capturas de imagen, fotos digitales, computadoras, archivos electrónicos, localizador de "GPS" y mensajes de voz. Neptune Rivera, op. cit., págs. 20-22.

### 1. Pertinencia y autenticación

Para que una evidencia sea admisible debe cumplir con los requisitos que establecen las Reglas de Evidencia. Como primer requisito,[23] toda evidencia, incluyendo la

---

Informe, pág. 672.

[22] La evidencia electrónica incluye textos, gráficas, fotografías, programas de televisión, películas, "CAT scans", Rayos-X, correos electrónicos, hoja de cálculo ('spreadsheets'), "stock trade", impresiones, cuentas de bancos, disco duro, geolocalización "GPS", etiqueta "RFID", registro de llamadas, textos, capturas de pantallas, entre otras. Véase, Michael R. Arkfeld, Arkfeld on Electronic Discovery and Evidence, Sec. 1.4(B), 4ta ed. (2015).

[23] Adviértase que, en casos de juicio por jurado, el tribunal deberá primero analizar si procede admitir la evidencia al amparo del inciso (A) o el inciso (B) de la Regla 109 de Evidencia, 32 LPRA Ap. VI. Los incisos (A), (C), (D) y (E) de la Regla 109 se refieren a determinaciones de admisibilidad en las que no participa el jurado, mientras que el inciso (B) regula la admisión de la evidencia cuando su pertinencia depende a su vez de una determinación de hecho que deberá realizar el jurado. Esta Regla "s[o]lo cobra importancia en juicios por jurado, pues lo que se regula es la división de funciones entre juez y jurado en cuanto a la admisibilidad de evidencia". Chiesa Aponte, op. cit., pág. 98. Para un análisis sobre la Regla 109 y lo que implica para la admisión de evidencia electrónica en casos de juicio por jurado, véase P. Grimm y otros, infra, págs. 5-11.

electrónica, debe satisfacer el requisito de pertinencia. La Regla 401 de Evidencia, 32 LPRA Ap. VI, dispone que se considerará como evidencia pertinente toda aquella que haga más o menos probable la existencia de un hecho que tiene consecuencias para la adjudicación de la acción, incluyendo aquella evidencia que sirva para impugnar o sostener la credibilidad de una persona o testigo declarante. Si la evidencia no es pertinente, el análisis termina ahí, pues esta no será admisible en nuestros tribunales. 32 LPRA Ap. VI, R. 402.

Una vez se establece que la evidencia propuesta es pertinente, esta tiene que cumplir con el requisito de autenticación. Rivera Menéndez v. Action Services, 185 DPR 431 (2012); Vivian I. Neptune Rivera, Los retos de la evidencia electrónica, 76 Rev. Jur. UPR 337, 347 (2007). Autenticar implica demostrar que la cosa es lo que la parte propone que es. E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, San Juan, Ed. Situm, 2016, pág. 345.

En nuestra jurisdicción la evidencia se autentica conforme la Regla 901 de las Reglas de Evidencia, 32 LPRA Ap. VI. El requisito de autenticación se satisface "con la presentación de evidencia **suficiente** para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". Íd. (Énfasis suplido). Este estándar de **suficiencia** es "menor que preponderancia y mucho menor que más allá de toda duda razonable". Neptune Rivera, op. cit., pág. 10. Si el juzgador estima que se presentó prueba suficiente para autenticar el objeto y

decide admitir la evidencia, "tal determinación no deberá ser alterada en apelación a no ser por un claro abuso de discreción". Pueblo v. Echevarría Rodríguez, 128 DPR 299, 349-350 (1991).

Una vez sea debidamente autenticada, la evidencia será admisible, a no ser que el tribunal la excluya al amparo de la Regla 403 de Evidencia, 32 LPRA Ap. VI,[24] o que opere alguna regla de exclusión de derecho probatorio. No obstante, cabe resaltar que la decisión sobre cuánto valor probatorio se debe otorgar a la evidencia admitida es una posterior y aparte que no debe confundirse con el análisis de autenticación.[25]

---

[24] Aun después de autenticada, el tribunal puede excluir la evidencia al amparo de la Regla 403, 32 LPRA Ap. VI. Esta dispone que el tribunal podrá excluir evidencia pertinente "cuando su valor probatorio qued[e] sustancialmente superado por cualesquiera de estos factores: (a) riesgo de causar perjuicio indebido; (b) riesgo de causar confusión; (c) riesgo de causar desorientación del Jurado; (d) dilación indebida de los procedimientos; (e) innecesaria presentación de prueba acumulativa". Íd. Véase Pueblo v. Bianchi Álvarez, 117 DPR 484, 492-493 (1986) ("En relación con la pertinencia de la prueba, una vez se presente suficiente evidencia para sostener la identificación o autenticación como condición previa a la admisión, el tribunal procederá a admitirla, salvo que determine, luego de hacer un adecuado balance entre su valor probatorio y el posible perjuicio, probabilidad de confusión, desorientación o dilación en los procedimientos, que [e]sta debe ser excluida").

[25] Según explica la profesora Neptune Rivera:

Una vez autenticada y admitida la evidencia electrónica es que el juzgador de hechos o el jurado llevará a cabo la valoración y decidirá el peso que le otorgará a cada pieza admitida. Es importante destacar que el proceso de valoración **es separado y posterior al proceso de admisión en evidencia**. Es de la totalidad de la prueba oral, documental, electrónica, digital, y prueba pericial, si alguna, que el juzgador decidirá si al valorarla se cumplió con el estándar de preponderancia requerido en casos civiles o si se probó el caso más allá de toda duda razonable en los casos criminales. Es importante esta distinción porque la autenticación y admisión de evidencia electrónica no determina el peso que se le dará a la misma al final. Esa valoración es posterior y dependerá de si la parte contraria presentó a su vez evidencia que ataque o merme ese valor probatorio con el fin de que se le otorgue poco o ningún valor probatorio.

La Regla 901 de Evidencia, <u>supra</u>, contiene una lista de métodos para autenticar evidencia, **pero esa lista no es taxativa**, por lo que la autenticación no tiene que realizarse mediante un método específico. <u>Rivera Menéndez v. Action Services</u>, 185 DPR 431, 441 (2012); <u>Pueblo v. Santiago Feliciano</u>, 139 DPR 361, 424 (1995). Ciertamente, la autenticación de evidencia electrónica acarrea retos evidenciarios.[26] No obstante, actualmente las Reglas de Evidencia permiten autenticar la evidencia electrónica sin el testimonio de una persona perita o experta en tecnología. V.I. Neptune Rivera, <u>Las redes sociales y los mensajes de texto: autenticación bajo las nuevas Reglas de Evidencia de Puerto Rico</u>, 44 Rev. Jur. U. Inter. P.R. 285, 303 (2010).

Así ocurre con los mecanismos de autenticación más comunes que las partes en un litigio pueden emplear para autenticar evidencia electrónica, a saber: (1) autenticación mediante características distintivas y (2) autenticación mediante el testimonio de un testigo con conocimiento. Estos son los dos medios de autenticación que están en juego en este caso, por lo que procedemos a

---

Neptune Rivera, <u>op. cit.</u>, págs. 27-28 (Énfasis suplido). Véase también <u>United States v. Vayner</u>, 769 F.3d 125, 131 (2d Cir. 2014) ("Thus, after the proponent of the evidence has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be, the opposing party 'remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, **but these and similar other challenges go to the *weight* of the evidence —not to its *admissibility*.'**") (Énfasis suplido) (citas omitidas).

[26] Entre los retos que presenta este tipo de evidencia se encuentra su capacidad de ser manipulada o alterada, distribuida o destruida con facilidad, imposibilidad de detectar cambios, capacidad de preservación, entre otras. Véase *Arkfeld*, supra, sec. 8.11(B); Neptune Rivera, <u>op. cit.</u>, pág. 56.

examinar los requisitos que cada uno exige cumplir para autenticar **una impresión ("printout") de una página web**. Ceñimos nuestro análisis a este tipo de evidencia electrónica en particular, pues es la que tenemos ante nuestra consideración en este caso. Debe tenerse presente que autenticar distintos tipos de evidencia electrónica requerirá analizar factores específicos, según la naturaleza de la evidencia que se busque admitir y los hechos de cada caso.

2. **Autenticación de impresiones ("printouts") de páginas web**

En términos generales, autenticar páginas web supone un reto desde el punto de vista de autenticación debido al carácter dinámico y cambiante de las mismas. No obstante, si al momento en que la parte solicita que se admita en evidencia una impresión de una página web esa página todavía está disponible en Internet de manera fiel y exacta al "printout", bastará con que las partes o el tribunal realicen una búsqueda en Internet para autenticarla. P. Grimm y otros, <u>supra</u>, pág. 24 ("If the issue is what is on the website at the time the evidence is being proffered, then there are no authenticity questions **because the court and the parties can simply access the site and see what the website says**.") (Énfasis suplido). No obstante, si la impresión de una página web se presenta con el propósito de probar que en un momento determinado la página web reflejaba fiel y exactamente lo que surge del "printout", esa impresión de la página web

tendrá que ser autenticada mediante uno de los mecanismos que dispone la Regla 901 de Evidencia, supra. Íd.

### 3. Autenticación de impresiones ("printouts") de páginas web: características distintivas

Actualmente, la Regla 901(b)(10) de Evidencia, 32 LPRA Ap. XI, permite autenticar evidencia mediante la identificación de características distintivas. Ello implica determinar que una evidencia es lo que el proponente alega que es, tomando para ello en consideración su apariencia, contenido, sustancia, patrones internos o cualquier otra característica distintiva considerada en conjunto con las circunstancias. Íd. Adviértase que "bajo este inciso, la prueba de autenticación puede consistir por completo en evidencia circunstancial pues no se requiere evidencia directa". Informe de la Comisión de Evidencia, supra, pág. 632 (citando a Weinstein's Federal Evidence, supra, Vol. 5, sec. 901.03[8]).[27]

Para hacer una determinación sobre autenticación de una impresión de una página web a base de características distintivas, el tribunal puede considerar: (1) si la dirección de Internet ("URL address") y la fecha en que se obtuvo constan en la impresión, (2) si la

---

[27] Véase también las Notas del Comité Asesor Federal a la Regla 901(b)(4) ("The characteristics of the offered item itself, **considered in the light of circumstances**, afford authentication techniques in great variety. Thus[,] a document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him […] [S]imilarly, a letter may be authenticated by content and circumstances indicating it was in reply to a duly authenticated one. Language patterns may indicate authenticity or its opposite.") (Énfasis suplido).

impresión contiene diseños, logos, fotos o imágenes distintivas que estén asociadas con la página web o su propietario,[28] (3) si los contenidos de la página web son de un tipo publicado habitualmente en esa página web, (4) si se ha compartido ese mismo contenido en otras páginas web y se ha atribuido al propietario de la página web, entre otras características distintivas. P. Grimm y otros, Authenticating Digital Evidence, 69 Baylor L. Rev. 1, 26 (2017).

**4. Autenticación de impresiones ("printouts") de páginas web: testimonio de un testigo con conocimiento**

La Regla 901(B)(1) de Evidencia, supra, también permite autenticar evidencia mediante el testimonio de un testigo con conocimiento a los efectos de que "una cosa es lo que se alega". En este contexto, ello significa que el tribunal puede autenticar una impresión de una página web si un testigo declara en sala o certifica mediante declaración jurada que: (1) ingresó la dirección de Internet ("URL address") que surge de la impresión de la página web en la fecha y hora indicadas; (2) ingresó a la

---

[28] El logo de una compañía en una página de Internet constituye una característica distintiva que permite su autenticación al amparo de la Regla 901(b)(4) de Evidencia federal, equivalente a la Regla 901(b)(10) nuestra. Michael R. Arkfeld, Arkfeld on Electronic Discovery and Evidence, Sec. 8.16(C)(1)(b)(i), 4ta ed. (2015). A tales efectos, este tratadista afirma que:

> Rule 901(b)(4) allows evidence to be authenticated by the presence of "[d]istinctive Characteristics and the Like." These characteristics may relate to an item's "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). **A company's logo or other appearance on a web page may provide factual authentication evidence.**

Arkfeld, supra, Sec. 8.16(C)(1)(a).

página web y revisó su contenido, y (3) el contenido de la impresión ("printout") refleja fiel y exactamente lo que el testigo percibió en la página web. P. Grimm y otros, Authenticating Digital Evidence, 69 Baylor L. Rev. 1, 26 (2017). Véase también *Arkfeld*, supra, sec. 8.16(C)(1)(b)(i) ("The focus of laying an authentication foundation is to determine what content was on the web site, whether the exhibit reflects it accurately, and if it [was] connected to the site's owner. Generally, one will need to provide testimony that someone located, visited, and viewed the web site as well as printed out or otherwise preserved an accurate copy of the web content.").

Este análisis es consistente con el que han realizado tribunales de otras jurisdicciones al momento de evaluar si una impresión de una página web se autenticó mediante testimonios. Véase Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc., 606 F. Supp. 2d 571, 594 (M.D.N.C 2009) (el tribunal avaló que el demandado autenticara las impresiones de varias páginas web mediante testigos que declararon que vieron e imprimieron la información de esa página web y que las impresiones eran representaciones fieles y exactas del contenido de la página para el día que se proponía) y Perfect 10 Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1154 (2002) (el tribunal expresó que, como regla general, ese tipo de testimonio es suficiente para establecer la autenticidad de impresiones de páginas de Internet).

### 5. Prueba de referencia

Si una parte objeta la admisión de una prueba por el fundamento de que constituye prueba de referencia, la parte que propone la evidencia deberá demostrar que esta: (1) no constituye prueba de referencia o (2) está cobijada por una de las excepciones a la norma general de exclusión de prueba de referencia. La Regla 801 de Evidencia, 32 LPRA Ap. VI, R. 801(c), establece que es prueba de referencia toda declaración "que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". En nuestro ordenamiento, la regla general es que los tribunales excluirán toda declaración realizada fuera del tribunal que se utilice para probar la verdad de lo aseverado. 32 LPRA Ap. VI, R. 804.

La Regla 805 de Evidencia enumera las excepciones a la norma general de exclusión de prueba de referencia.[29] 32 LPRA Ap. VI, R. 805. Por otro lado, nuestras Reglas de Evidencia también identifican declaraciones que no se considerarán prueba de referencia.[30] Entre ellas, se

---

[29] Las excepciones son: declaraciones contemporáneas a la percepción; declaraciones espontáneas por excitación; condición mental, física o emocional; declaraciones para fines de diagnóstico o tratamiento médico; escrito de pasada memoria; expedientes de actividades que se realizan con regularidad; ausencia de entradas en los récords; expedientes e informes públicos; expediente de estadística vital; ausencia de expediente público; expedientes de organizaciones religiosas; certificados de matrimonio, bautismo y otros similares; expedientes de familia; expedientes oficiales sobre propiedad; declaraciones en documentos que afecten intereses en propiedad; declaraciones en documentos antiguos; listas comerciales y otras similares; tratados; reputación sobre historial personal o familiar; reputación sobre colindancias o historial general; reputación sobre carácter y sentencia por condena previa. 32 LPRA Ap. VI, R. 805.

[30] Es importante resaltar que, para propósitos de prueba de referencia en el contexto de evidencia electrónica, una declaración es aquella almacenada por un dispositivo electrónico y no aquella generada o

encuentra una declaración que hace la propia parte cuando se ofrece contra esta. 32 LPRA Ap. VI, R. 803(a). En particular, la Regla 803(a) de Evidencia dispone que será admisible contra una parte una declaración hecha por esa misma parte en su capacidad individual o representativa. En tal caso, esa declaración que se realizó fuera del tribunal se tratará como una admisión de la parte y, por ende, no se considerará prueba de referencia. P.D.C.M. Assoc. v. Najul Bez, 174 DPR 716, 729 (2008); F.D.I.C. v. Caribbean Mktg. Ins. Agency, 123 DPR 247, 257-58 (1989); Neptune Rivera, op. cit., pág. 100. Por lo tanto, cuando una parte emite una comunicación electrónica que luego se ofrece en su contra, esta no constituye prueba de referencia. Al respecto, el tratadista Arkfeld afirma que "[w]eb site content published by a party may be admissions of that party when offered by an opponent". *Arkfeld*, supra, sec. 8.16(b)(i).

La admisibilidad de una impresión o "printout" de una página web como admisión de parte no ha sido objeto de expresiones de este Tribunal, pero sí por parte de otros tribunales estatales y federales. En United States v. Brinson, 772 F.3d 1314 (10th Cir. 2014), el demandado alegó que las impresiones de unas publicaciones que realizó en la página de Internet de Facebook eran inadmisibles por constituir prueba de referencia y que el

creada automáticamente por un dispositivo electrónico. Entiéndase, cuando una persona escribe un correo electrónico hace una declaración que, a su vez, es almacenada electrónicamente. Contrario a cuando una persona envía el correo electrónico la hora y la fecha es generada por el dispositivo electrónico. Véase Steven Goode, The Admissibility of Electronic Evidence, 29 Rev. Litig. 1, 42-43 (2009).

tribunal de distrito había errado en admitirlas. El Tribunal de Apelaciones federal para el Décimo Circuito, luego de analizar la prueba, confirmó el dictamen del tribunal de distrito. Determinó que las impresiones –luego de ser debidamente autenticadas– no constituían prueba de referencia pues eran admisiones de parte.

Por otro lado, en Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1109 (D. Or. 2000), el tribunal admitió el contenido de una página web tras concluir que se trataba de una admisión de parte. El demandante alegó ver personalmente la página de Internet del demandado y presentó una declaración jurada que detalló específicamente lo que vio. El tribunal determinó que el contenido de la página web no constituía prueba de referencia y que era admisible como admisión de parte al amparo de la Regla 801(d)(2)(A) de Evidencia federal.[31]

III

Global sostiene que no existe controversia de hechos esenciales que amerite conceder remedio alguno a la señora Rosado Reyes. Además, argumenta que los documentos que la demandante utilizó para controvertir la sentencia sumaria

---

[31] La regla federal de admisión de parte también ha sido fundamento para admitir otro tipo de evidencia electrónica, como mensajes de texto. Por ejemplo, en Magiera v. City of Dallas, 389 Fed. Appx. 433 (5th Cir. 2010), el Quinto Circuito confirmó la admisibilidad de unos mensajes de texto que envió un supervisor a su empleada en los cuales se demostró que se le prohibió participar en unos entrenamientos por haber entablado una demanda contra el patrono. También se han considerado los correos electrónicos como admisión de parte. En United States v. Tann, 425 F. Supp. 2d 26, 37-38 (D.D.C. 2006) el demandado se opuso a que se admitiera un correo electrónico en su contra. El tribunal, luego de haber autenticado los mensajes, los admitió al amparo de la Regla 801(d)(2) federal, equivalente a la Regla 803(c) nuestra sobre admisión de parte. Véase también In re Homestore.com, Inc. Securities Litigation, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004).

son inadmisibles en evidencia. No le asiste la razón. El foro apelativo intermedio actuó correctamente al revocar al Tribunal de Primera Instancia y sostener que hay una controversia genuina y sustancial de hechos materiales en este caso. Lo anterior, pues la impresión que la recurrida obtuvo de la página web de Global el 25 de enero de 2016 es admisible en evidencia y capaz de refutar la alegada ausencia de licencia. Veamos por qué.

En primer lugar, la recurrida presentó evidencia suficiente —para propósitos de autenticación— de que la página web donde se publicó el anuncio pertenecía a Global. Por un lado, la impresión de la página web de Global exhibe características distintivas, pues contiene: (1) el nombre y logo de Global, (2) la fecha en que se publicó el anuncio, (3) la fecha en que la recurrida imprimió el anuncio de la página web, (4) la persona contacto en Global a quien los candidatos deberán remitir sus solicitudes de empleo,[32] (5) una descripción de las labores a realizar,[33] y (6) la dirección física de la compañía, entre otras características distintivas.[34] Además, la señora Rosado Reyes consignó mediante declaración jurada que obtuvo el anuncio en la página web de Global y que la impresión que anejó como evidencia es una representación fiel y exacta de

---

[32]  Según la recurrida, esta persona —la Sra. Ana Rowling— fungió como su supervisora mientras laboró para Global y fue quien que le comunicó el despido por la alegada falta de licencia. *Escrito de Transcripción a Deposición*, Apéndice, págs. 128 (líneas 8 y 9) y 131.
[33] Cabe mencionar que se trata de las mismas labores que la señora Rosado Reyes fue contratada para realizar.
[34] Apéndice, pág. 153.

lo que vio en Internet.[35] Global en ningún momento negó que publicó ese anuncio en su página web.[36]

En vista de todo lo anterior, concluimos que la recurrida cumplió con el estándar de suficiencia que exige la Regla 901 de Evidencia, supra, para autenticar prueba en nuestra jurisdicción. En este caso, salta a la vista que el foro primario no realizó determinación alguna con relación a si el anuncio de Internet se autenticó o no conforme a la Regla 901 de Evidencia, supra. Optó en vez por excluirlo por razón de que constituyó "prueba de referencia y meras suposiciones y conjeturas de la querellante".[37] Erró al obrar así, pues el análisis jurídico en estos casos debe comenzar siempre con una determinación preliminar sobre pertinencia y autenticación.

Debido a que la impresión de la página web de Global que presentó la recurrida cumple con los requisitos de autenticación que establece la Regla 901 de Evidencia, supra, y que Global no solicitó su exclusión al amparo de la Regla 403 de Evidencia, supra, procede evaluar si el foro primario erró al determinar que esta constituye prueba de referencia. Concluimos que el error se cometió. Para autenticarlo, la recurrida presentó evidencia suficiente de que **Global publicó el anuncio en su página web.** Establecido lo anterior, es forzoso concluir que el anuncio de Internet constituye una admisión de parte a la que no le aplica la

---

[35] *Testimonio*, Apéndice, págs. 152-54.
[36] Además, contrario a que Global alegó, el anuncio de Internet en controversia sí formó parte del descubrimiento de prueba. *Transcripción de la Deposición*, pág. 36.
[37] *Resolución*, Apéndice, pág. X.

regla general de exclusión de prueba de referencia. P.D.C.M. Assoc. v. Najul Bez, supra. Conforme resolvió el foro apelativo intermedio, este anuncio de Internet –publicado apenas 5 días luego de que la recurrida fuese despedida[38]– controvirtió la alegada falta de licencia que adujo Global en su moción de sentencia sumaria para justificar el despido de la recurrida.

IV

En vista de lo anterior, se confirma la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[38] Nótese que, para propósitos de controvertir la alegada falta de licencia de Global, la recurrida únicamente tenía que presentar evidencia suficiente para establecer que Global publicó el anuncio en una fecha determinada, es decir, poco después de su despido. La recurrida presentó evidencia suficiente para autenticar el anuncio para esos propósitos, pues: (1) certificó mediante declaración jurada que obtuvo el anuncio de la página web de Global y lo imprimió el 25 de enero de 2016 y (2) en el "printout" del anuncio consta la fecha de impresión. Véase P. Grimm y otros, pág. 29.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Abigail Rosado Reyes

    Recurrida

      v.                          AC-2019-0001

Global Healthcare Group, LLC

    Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 6 de noviembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo